UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v.-<br><br>MARTIN HANDLER,<br>                     Defendant. | 23 Cr. 004 (JHR)<br><br>OPINION & ORDER |

JENNIFER H. REARDEN, District Judge:

On March 15, 2024, Defendant Martin Handler pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to one count of conspiracy to defraud the United States, two counts of federal program theft, and one count of tax evasion. *See* ECF No. 246 (Plea Tr.); ECF No. 348-21 (Plea Agreement). On October 2, 2024, Defendant was sentenced, within the Guidelines range to which the parties had agreed (the "Stipulated Guidelines Range"), to 58 months' imprisonment and three years of supervised release. *See* ECF No. 490 (Judgment) at 3-4; Plea Agreement at 6. The Court ordered Defendant to surrender on January 7, 2025. *See* Judgment at 3. On October 15, 2024, Defendant filed a Notice of Appeal. *See* ECF No. 500 (Notice of Appeal).

Before the Court is Defendant's motion for bail pending appeal pursuant to 18 U.S.C. § 3143(b). ECF No. 513 (Mot.); ECF No. 527 (Reply Br.). The Government opposes. ECF No. 523 (Opp.).

For the reasons stated below, Defendant's motion is DENIED.

## I.    BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and history of this matter. The facts relevant to the instant motion are briefly summarized below.

This case arises out of Defendant's participation in efforts to defraud government-funded daycare programs. Those efforts included impairing the function of the U.S. Department of

Health and Human Services ("HHS") to administer the federal Head Start program by preventing HHS from ensuring that Head Start grant recipient Project Social Care Head Start ("PSCHS"), a non-profit daycare provider controlled by Defendant, complied with the grant's conflict-of-interest and governance policies. ECF No. 316 (PSR) ¶¶ 4, 27, 37-39. While Defendant controlled PSCHS, PSCHS provided Defendant's for-profit daycare company, New York City Early Learning Company ("NYCELC"), with millions of dollars in grant funds for services to low-income families. *Id.* ¶¶ 36-39, 45. In violation of Head Start and NYCELC policies, Defendant used NYCELC funds to repay a personal loan and give cars to an NYCELC board member. *Id.* ¶¶ 40-51.

On January 11, 2023, Defendant was arrested on a seven-count indictment charging him and other individuals with various crimes pertaining to this conduct. ECF No. 2 (Indictment). On September 12, 2023, an eight-count superseding indictment (the "Superseding Indictment") was filed with updated charges against Defendant and others. ECF No. 129 (Superseding Indictment). As relevant here, Count Three charged Defendant with conspiring to defraud the United States by impairing, impeding, or obstructing the lawful functions of HHS through dishonest means, in violation of 18 U.S.C. § 371. *Id.* ¶¶ 20-25. Counts Five and Seven charged him with federal program theft, specifically by using his position at NYCELC to, respectively, (1) "funnel[]" Head Start grant proceeds to a co-defendant, *see id.* ¶¶ 30-31; and (2) misapply funds from NYCELC's operating account to make personal purchases (including real estate, historical items at auction, and a luxury vehicle), repay a personal loan, and compensate NYCELC's chairperson with luxury vehicle leases, in violation of 18 U.S.C. § 666(a)(1)(A) & (2), *see id.* ¶¶ 36-37.

On March 15, 2024, Defendant pleaded guilty, pursuant to the Plea Agreement, to Counts Three, Five, and Seven of the Superseding Indictment. *See* Plea Tr. at 55. He also pleaded

guilty, pursuant to the Plea Agreement, to a one-count superseding information charging him with tax evasion for the tax year 2021, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2. *Id.*

In the Plea Agreement, the parties stipulated to a total offense level of 24 and a Criminal History Category of I, yielding a Stipulated Guidelines Range of 51 to 63 months' imprisonment. *See* Plea Agreement at 6. As relevant here, the Plea Agreement contains the following provision governing departures from the Stipulated Guidelines Range (the "Departure Provision"):

> [N]either a downward nor an upward departure from the Stipulated Guidelines Range . . . is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines not set forth [in the Plea Agreement]. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.[1]

*Id.* Notwithstanding these restrictions, the Plea Agreement expressly provided that the parties were *not* prohibited from (1) "present[ing] to the Probation Office or the Court any facts relevant to sentencing"; or (2) "mak[ing] any arguments regarding where within the Stipulated Guidelines Range . . . the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a)." *Id.* The Plea Agreement also included an appeal waiver, which provided that Defendant "w[ould] not file a direct appeal . . . of any sentence within or below the Stipulated Guidelines Range." *Id.* at 7. Finally, the Plea Agreement contained an integration clause stating that "th[e] Agreement supersede[d] any prior understandings, promises, or conditions between th[e] [Government] and the defendant," and that "[n]o additional understandings, promises, or conditions ha[d] been

---

[1] A "'[d]eparture' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry v. United States*, 553 U.S. 708, 714 (2008). Chapter Three of the Guidelines is titled "Adjustments" and identifies applicable decreases and increases in the offense level based on, among other factors, whether the victim is an "official victim" such as a "government officer," U.S.S.G. § 3A1.2; the defendant's "role in the offense," *id.* § 3B; and the defendant's "acceptance of responsibility," *id.* § 3E1.1.

entered into other than those set forth in th[e] Agreement." *Id.* at 9.

At his plea hearing, Defendant confirmed under oath that he "fully underst[ood]" the Plea Agreement, and that the Agreement "constitute[d] [his] complete and total understanding of [his] agreement with the government." Plea Tr. at 35:7-8, 40:24-25. Based on these and other representations, the Court accepted Defendant's guilty plea.

In the wake of Defendant's plea hearing, Defendant took the position that the Government had breached the Plea Agreement. *See, e.g.*, ECF No. 326 (Def. Sentencing Submission) at 17; ECF No. 366 (June 26, 2024 Tr.) at 18-19, 29-30; ECF No. 374 (Def. July 7, 2024 Letter) at 3. Defendant contended that, in written submissions and in comments in Court, the Government had "alleg[ed] a different amount of loss" than the stipulated loss figures in the Plea Agreement, in violation of the Plea Agreement's Departure Provision precluding either party from "suggest[ing] that the Probation Office or the Court consider such an . . . adjustment under the Guidelines." Def. July 7, 2024 Letter at 3 (alterations and emphasis omitted) (quoting Plea Agreement at 6). The Government responded that it "stood by the Guidelines calculations stipulated in the plea agreement" and sought a "63-month sentence" at the top of the Stipulated Guidelines Range. ECF No. 348 (Gov't Sentencing Submission) at 16, 18. Defendant agreed that he would not "seek any other remedies" for the Government's alleged breach but warned that he might change course "[i]f the [G]overnment does additional things that [he] think[s] are in breach." June 26, 2024 Tr. at 42:25-43:2.

Meanwhile, on May 24, 2024, NYCELC applied to receive restitution as "the victim" in this matter. ECF No. 290 (NYCELC Restitution Appl.) at 1. In considering NYCELC's application, the Court solicited several rounds of written submissions and the production of documentary evidence. *See, e.g.*, ECF No. 446 (Aug. 14, 2024 Order); ECF No. 470 (Sept. 12, 2024 Order). On September 12, 2024, the Court directed the Government and NYCELC to, *inter*

4

*alia*, "submit any [] evidence that bears on whether NYCELC had unclean hands and/or acted as an uncharged co-conspirator." Sept. 12, 2024 Order at 4. On September 18, 2024, pursuant to that Order, the Government filed a submission purportedly establishing that "NYCELC [wa]s a coconspirator in [Defendant's] offenses, not a victim," and therefore was not entitled to restitution. ECF No. 474 (Gov't Sept. 18, 2024 Letter) at 2; *see also* ECF No. 480 (Sept. 25, 2024 Gov't Letter). In support, the Government proffered what it argued was evidence that, among other things, "at Handler's direction, on one occasion, NYCELC's director of operations [] retrieved a bag from a [NYCELC] vendor containing a cash payment . . . for Handler," which the director "understood . . . to be a kickback to Handler." Gov't Sept. 18, 2024 Letter at 7; *see also* Sept. 25, 2024 Gov't Letter.

On September 24, 2024, in response to the Government's September 18 submission regarding restitution, Defendant filed an application asking the Court to "hold that the government ha[d] breached the terms of the Plea Agreement." ECF No. 478 (Def. Breach of Plea Appl.) at 2. Defendant argued that, in order "to influence the Court to sentence Mr. Handler more harshly," the Government's September 18 letter "ma[de] multiple accusations against Mr. Handler of criminal or fraudulent conduct outside the scope of the Plea Agreement," in violation of the Departure Provision. *Id.* at 3. Defendant cited "the allegation that Mr. Handler accepted a 'kickback' from a vendor of NYCELC" as "[t]he most egregious" example in the Government's letter. *Id.* In light of the Government's purported breach, Defendant requested that the Court "reassign the case for sentencing." *Id.* at 8. The Government countered that the information it had provided to the Court was "expressly authorize[d]" by the Plea Agreement. *See* ECF No. 482 (Gov't Sept. 27, 2024 Letter) at 4 (citing Plea Agreement's provision allowing the parties "(i) to present to the Probation Office or to the Court *any facts relevant to sentencing*; and (ii) to make any arguments regarding where within the Stipulated Guidelines Range . . . the defendant

5

should be sentenced and regarding the [Section 3553(a)] factors to be considered in imposing a sentence" (quoting Plea Agreement at 6)). The Government also asserted that the information it had proffered did not constitute a request for "a departure or adjustment to the applicable Guidelines range" and reaffirmed its "position throughout sentencing that the Guidelines range agreed to by the parties in the plea agreement is correct." *Id.* at 4-5.

On October 2, 2024, at the beginning of Defendant's sentencing hearing, the Court denied Defendant's September 24 application, ruling that the Government had not breached the Plea Agreement. Sentencing Tr. at 5:4-10:9. The Court also announced that it had not considered the Government's kickback allegation for "any [] aspect of the sentencing" except determining the proper restitution recipient. *Id.* at 40:3-13. Nor did the Court "find . . . material" the specific loss figures to which Defendant had objected. *Id.* at 28:10-11 (identifying as "immaterial" to sentencing the "approximately $12.2 million earmarked for child care to low-income families" that Defendant allegedly had obtained through his companies; the "additional $2,592,000 in payments to defendant Werczberger"; and the "$87,272,958 reflecting . . . the aggregated amount of money issued in grants by HHS to PSCHS for Head Start, [Early Head Start][,] and related programming for low-income families").[2]

After careful consideration of the 18 U.S.C. § 3553(a) factors, the Court sentenced Defendant to 58 months' imprisonment. *Id.* at 86:1-5; Plea Agreement at 6 (reflecting that "the defendant's stipulated Guidelines range is 51 to 63 months' imprisonment"). The Court ordered

---

[2] Defendant also objected to the Government having informed the Probation Office that "'Mr. Handler was able to direct PSCHS to pass through approximately $8.6 million of EHS-CCP Award proceeds to NYCELC' between 2018 and 2022." Mot. at 10 (quoting Initial PSR ¶ 38). In response, the Probation Office clarified that, despite this $8.6 million figure, "PSCHS incurred no additional loss due to the money PSCHS sent to Handler's for-profit entities." Final PSR ¶ 38 n.3; *see id.* at 47 (finding the $8.6 million pass-through figure "to be relevant to understanding the large-scale transactions that occurred between PSCHS and NYCELC" and recognizing nonetheless that "there is no identifiable loss suffered by PSCHS").

6

that Defendant surrender to his designated institution no later than January 7, 2025 at 2:00 p.m. Judgment at 3. On October 15, 2024, Defendant appealed from the Judgment. Notice of Appeal. On October 21, 2024, Defendant filed the instant motion for bail pending appeal. Mot. at 1.

## II. LEGAL STANDARD

"The Bail Reform Act . . . sets forth the procedure by which judicial officers determine whether a recently convicted person is eligible for release pending appeal." *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991); *see* 18 U.S.C. § 3143(b). "Pursuant to the Bail Reform Act, the Court 'shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained,' unless it makes certain findings by 'clear and convincing evidence.'" *United States v. Hopkins*, No. 22 Cr. 465 (RA), 2024 WL 4265292, at *2 (S.D.N.Y. Sept. 20, 2024) (quoting 18 U.S.C. § 3143(b)(1)). "As articulated by the Second Circuit in *United States v. Randell*, district courts may only allow a defendant to remain on release pending appeal where they make the following determinations," *id.*:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
> (2) that the appeal is not for purpose of delay;
>
> (3) that the appeal raises a substantial question of law or fact; and
>
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed.

*Id.* (quoting *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985)). "'The burden of persuasion rests on the defendant' to demonstrate that each of these four requirements is met." *Id.* (alterations omitted) (quoting *Randell*, 761 F.2d at 125); *accord United States v. Lasher*, No. 12 Cr. 868 (NRB), 2015 WL 7769528, at *2 (S.D.N.Y. Nov. 30, 2015) ("in order to obtain bail

7

pending appeal, the defendant must persuade the district court of [the foregoing] four propositions").

With respect to the third prong, "[t]he Second Circuit has defined a 'substantial question of law or fact' as a question 'of more substance than would be necessary to a finding that it [i]s not frivolous'—that is, 'a close question or one that very well could be decided the other way.'" *United States v. Jaata*, No. 18 Cr. 162 (PGG), 2022 WL 1443945, at *5 (S.D.N.Y. May 5, 2022) (quoting *Randell*, 761 F.2d at 125). "If a question is substantial, then [under the fourth prong] the Court 'must consider whether the question is so integral to the merits of the conviction on which the defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'" *United States v. Munshani*, No. 22 Cr. 215 (JSR), 2023 WL 5390201, at *1 (S.D.N.Y. Aug. 21, 2023) (quoting *Randell*, 761 F.2d at 125) (cleaned up). "Put differently, the appeal must raise a substantial question that, if decided in defendant's favor, will likely result in a reversal or order for a new trial as to all counts for which a defendant has been sentenced to prison." *United States v. Bodouva*, No. 16 Cr. 214 (VEC), 2016 WL 7351634, at *2 (S.D.N.Y. Dec. 16, 2016).

### III.   DISCUSSION

The Government does not dispute that Defendant is not dangerous or likely to flee or that his appeal is not for the purpose of delay.[3] Defendant's motion therefore turns on whether his appeal presents a substantial question of law or fact and, if so, whether that question would likely result in reversal or a new trial.

---

[3] In any event, in light of Defendant's failure to raise a "substantial question of law or fact," *see infra*, the Court need not reach this issue, *see United States v. Tischler*, No. 11 Cr. 424 (NRB), 2013 WL 4535431, at *9 (S.D.N.Y. Aug. 23, 2013) ("Since [defendant] fails to establish that his appeal raises a substantial question of law or fact which, if determined favorably, is likely to result in reversal or an order for a new trial, [the Court] need not decide whether he poses a risk of flight in order to deny his motion for bail pending appeal.").

Defendant asserts that whether the Government breached the Plea Agreement raises "a substantial question of law" entitling him to bail pending appeal. Specifically, he argues that the Government breached by (1) violating the Plea Agreement's "stipulations of fact, in particular concerning the amount of 'loss,'" Mot. at 9; (2) "stat[ing] that [Defendant] had engaged in embezzlement, stealing, or theft from NYCELC, even though it knew that he had only misapplied funds," Reply Br. at 7; and (3) raising, prior to sentencing, "new accusations of criminal or fraudulent conduct outside the Plea Agreement," Mot. at 14. Because "[Defendant's] arguments are belied by the record," *United States v. Keita*, 19 Cr. 808 (VEC), 2022 WL 72299, at *3 (S.D.N.Y. Jan. 7, 2022), and are "precluded by well-established authority," *United States v. Aiyer*, 500 F. Supp. 3d 21, 23-26 (S.D.N.Y. 2020), he cannot and does not prove by clear and convincing evidence that his anticipated appeal presents a substantial question of law.

A.   **Defendant's Appeal Raises No Substantial Question as to Whether the Government Breached the Plea Agreement.**

The Court "review[s] a plea agreement in accordance with principles of contract law and look[s] to what the parties reasonably understood to be the terms of the agreement to determine whether a breach has occurred." *United States v. Helm*, 58 F.4th 75, 83 (2d Cir. 2023) (quoting *United States v. Sealed Defendant One*, 49 F.4th 690, 696 (2d Cir. 2022)). It does so "by looking to 'the precise terms of the plea agreements and to the parties' behavior.'" *Id.* (quoting *United States v. Wilson*, 920 F.3d 155, 163 (2d Cir. 2019)). The Court also "construe[s] plea agreements strictly against the government and do[es] not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness." *Wilson*, 920 F.3d at 162 (cleaned up).

"[U]nder the plain meaning of the parties' plea agreement, the [G]overnment was able to provide Probation" and the Court "with [] factual information," *United States v. Gordon*, No. 18

Cr. 373 (RJS), 2020 WL 529301, at *3 (S.D.N.Y. Feb. 3, 2020), concerning the "nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1). As noted *supra*, the Plea Agreement expressly permits the parties to "seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a)" and to "make any arguments regarding where within the Stipulated Guidelines Range . . . the defendant should be sentenced." Plea Agreement at 6. It also allows the parties "to present to Probation or the Court any facts relevant to sentencing." *Id.* "The Second Circuit has repeatedly interpreted identical language contained in other plea agreements as allowing the government to provide Probation or the Court with facts beyond—and, in at least one instance, even inconsistent with—what was set forth in the parties' plea agreement." *Gordon*, 2020 WL 529301, at *3 (collecting cases); *see, e.g.*, *United States v. Washington*, 297 F. App'x 62, 63 (2d Cir. 2008) (finding no breach where the Government raised facts suggesting that the defendant's offense level and restitution amount should be higher than it had stipulated but nonetheless recommended "that [the defendant] be sentenced within the parties' stipulated Guidelines' range, both as to the term of imprisonment and restitution amount").

### 1. The Government Did Not Breach Any "Underlying" Stipulation of Fact.

Defendant contends that the Government breached "many stipulations of fact, in particular concerning the amount of 'loss.'" Mot. at 9. In purported support, Defendant cites Guidelines commentary about "written stipulation[s] of facts" that may "accompan[y]" a plea agreement, U.S.S.G. § 6B1.4, comment; Mot. at 9-10. Here, however, no such stipulations accompanied the Plea Agreement. Instead, Defendant construes the Plea Agreement's Stipulated Guidelines Range not merely as "stipulations as to how the guidelines should be calculated, but also [as] underlying stipulations of fact." Reply Br. at 7; *see* Mot. at 9-10 (citing Stipulated

10

Guidelines Range for the propositions that "[t]he parties agreed that the loss associated with Count One—i.e., the loss to HHS—was zero" and "that the loss associated with the misapplication of NYCELC funds was between $550,000 and $1,500,000"). In so doing, Defendant relies on inapposite out-of-circuit precedent. Reply Br. at 3 (citing *United States v. Yusuf*, 993 F.3d 167, 178 (3d Cir. 2021) (concluding that the defendant breached his plea agreement by requesting a downward variance because his agreement, unlike Defendant's, "unambiguously prohibit[ed] [the defendant] from 'seek[ing] or argu[ing] for any upward or downward departure, adjustment or *variance* not set forth herein" (emphasis added))); *United States v. DeWitt*, 366 F.3d 667, 668 (8th Cir. 2004) (determining that the Government had breached an explicit factual stipulation that "[t]he amount of pseudoephedrine to be used to calculate the sentencing guidelines is 1.12 grams").

In any event, Defendant's argument is "precluded by well-established authority." *Aiyer*, 500 F. Supp. 3d at 25; *see, e.g.*, *United States v. Robinson*, 634 F. App'x 47, 50 (2d Cir. 2016) (recognizing that the Government does not breach a plea agreement where it "confine[s] itself to a recitation of the facts—or even to a § 3553(a) argument based on the facts"—including when the facts justify a sentencing enhancement that differs from the plea agreement's Guidelines calculation); *United States v. Rivera*, 115 F.4th 141, 152 (2d Cir. 2024) (holding that the Government did not breach the plea agreement by informing the Court about the "defendant's leadership role in the conspiracy," notwithstanding that this fact could have triggered a 2-, 3-, or 4-level increase to the stipulated offense level).

The Second Circuit and district court opinions in *United States v. Washington* are instructive. No. 6 Cr. 160 (LAK), ECF No. 31 (Op.) (S.D.N.Y. June 25, 2007); 297 F. App'x 62, 63 (2d Cir. 2008). In *Washington*, the defendant pleaded guilty to mail fraud and stipulated to an offense level "based upon a loss of over $200,000," No. 06 Cr. 160 (LAK), ECF No. 24 (Def.

11

Mem.), at 2, 4-5 (S.D.N.Y. Dec. 13, 2006)—specifically, "between $200,000 and $400,000," No. 06 Cr. 160 (LAK), ECF No. 27 (Gov't Mem.), at 7 (S.D.N.Y. Jan. 3, 2007). In its sentencing submission, however, the Government claimed that "the *actual loss amount* would push the offense level higher" than the agreed-upon level. *Washington*, Op. at 1 (emphasis added). In response, the defendant moved for the court to hold that the Government had breached the plea agreement including by "submitt[ing] a 'Victim Impact Statement' in which a single business quoted a loss of $480,000.00[,] . . . leav[ing] the Court in an impossible position . . . to determine that the loss was less than $400,000." *Washington*, Def. Mem. at 1, 4-5. Presumably Defendant would similarly argue that the stipulated loss amount constituted a "binding agreement" that no more than $400,000 in "pecuniary harm [had] resulted from that offense." Reply Br. at 4.

The district court in *Washington* nonetheless concluded that the defendant's application to withdraw his plea was "entirely baseless." *Washington*, Op. at 1. Although the Government had raised facts about additional financial harm, the Government also had acknowledged the stipulated Guidelines range and "requested that the defendant be sentenced within that range." *Id.* The Second Circuit concluded that the district court had made "no error" by proceeding to sentencing because, as in the instant matter, "[t]he plea agreement specifically stated that the parties could 'present to the Court any facts relevant to sentencing' and could 'make any arguments regarding where within the Stipulated Guidelines Range (or any other range as the Court may determine) the defendant should be sentenced.'" *Washington*, 297 F. App'x at 63 (cleaned up).

### 2. The Government Did Not Breach by Describing Defendant's Conduct as "Theft" or "Embezzlement."

Defendant next contends that the Government's "false statements about the misapplication charges [i.e., Counts Five and Seven]" also constituted a breach of the Plea

12

Agreement. Mot. at 9. According to Defendant, as "a critical point in plea negotiations," the parties had reached an "understanding" that Counts Five and Seven were premised "on a theory of misapplication, rather than theft or embezzlement," and that this "understanding was memorialized in the immunity paragraph of the Plea Agreement in which the government agreed not to further prosecute Mr. Handler for the crimes to which he was pleading guilty." *Id.* at 9-10 (citing immunity paragraph's characterization of Counts Five and Seven as "intentionally *misapplying* funds"). Defendant argues that the Government "reneged on that understanding" at the plea hearing and at sentencing, "when it stated that [Defendant] had engaged in embezzlement, stealing, or theft from NYCELC, even though it knew that he had only misapplied funds." Mot. at 9; Reply Br. at 3.

Defendant's argument elides several key realities about the parties' supposed "understanding." As Defendant himself acknowledges, it was only "memorialized in the immunity paragraph of the Plea Agreement." Mot. at 9 (citing Plea Agreement at 2). The immunity paragraph, however, does not bind the Government's sentencing advocacy. Nor does that provision overcome the Plea Agreement's "integration clause[, which] expressly disavow[s] the existence of any understandings other than those set forth in the plea agreement." *In re Altro*, 180 F.3d 372, 376 (2d Cir. 1999); *see* Plea Agreement at 9 ("[n]o additional understandings, promises or conditions have been entered into other than those set forth in this Agreement"); *see also* Plea Tr. at 42:11-15 (recognizing that no party had "made any promise . . . or offered anything" to Defendant to induce him to sign the plea "[o]ther that what is written in the agreement"). Accordingly, the Government was not bound by any "understanding" that it would characterize Defendant's offense conduct as "misapplication" of funds. Mot. at 9.

13

### 3. The Government Did Not Breach by Raising New Allegations of Criminal or Fraudulent Conduct.

Finally, Defendant argues that the Government breached the Plea Agreement by raising, prior to sentencing, "new accusations of criminal or fraudulent conduct outside the Plea Agreement." Mot. at 10-11. Specifically, Defendant points to the Government's "allegation that [Defendant] accepted a 'kickback' from a vendor of NYCELC in the form of a bag of cash." *Id.* at 10 (quoting Gov't Sept. 18, 2024 Letter at 7). The Court expressly excluded this allegation from consideration in imposing Defendant's sentence. *See* Sentencing Tr. at 40:3-13. Defendant asserts, however, that "the government breache[d] the plea deal by its sentencing advocacy, even when it is undisputed that the advocacy had no effect on the sentencing judge." Mot. at 13 (citing *Puckett v. United States*, 556 U.S. 129, 137-38 (2009); *Santobello v. New York*, 404 U.S. 257, 262-63 (1971)). He maintains that this advocacy "violated the [p]lea [a]greement's provision that neither party would seek any departure or adjustment not set forth in the agreement, nor '*in any way suggest* that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.'" Mot. at 11 (quoting Plea Agreement at 6).

Defendant misunderstands the relationship between that provision and the one "allowing the [G]overnment to argue for an above-Guidelines sentence based on the § 3553 factors." *United States v. Dean*, 666 F. App'x 81, 83 (2d Cir. 2016). If the latter provision "is to have meaning, the [G]overnment must [] be allowed to make [§ 3553] arguments even if they overlap to some extent with the argument for a potential enhancement." *Id.* It can describe facts—even facts related to an enhancement—where, as here, those "facts [are] relevant to the district court's application of the sentencing factors" and the Government "in no way suggest[s] that any role enhancement . . . [i]s warranted." *Rivera*, 115 F.4th at 152; *see United States v. Tokhtakhounov*,

14

607 F. App'x 8, 11 (2d Cir. 2015).[4]

The Government's accusations about a kickback scheme were "relevant to sentencing," Plea Agreement at 6, because they were responsive to the Court's Order directing the Government to provide information concerning NYCELC's restitution request, *see* Sept. 12, 2024 Order; Sept. 25, 2024 Gov't Letter.  In any event, if the Court had considered the alleged kickback scheme in imposing Defendant's sentence—which it did not—these facts also would have been relevant to "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 5335(a)(1); *see United States v. McGowan*, 315 F. App'x 338, 343 (2d Cir. 2009) (concluding that the defendant's "post-plea telephone conversations" that "alluded to" *uncharged* "prior sexual activity between himself and [a] minor . . . support[ed] the district court's conclusion that the nature and circumstances of the offense, and the history and characteristics of the defendant, require[d] a lengthy sentence"); *see also United States v. Fama*, No. 12 Cr. 186 (WFK), 2016 WL 6820373, at *2-5 (E.D.N.Y. Nov. 17, 2016) (varying upward from the Guidelines range based, in part, on evidence of an uncharged prior robbery).  Thus, the Plea Agreement expressly permitted the Government to present these

---

[4] Defendant relies on a footnote in *Rivera* that recognizes "some tension" in the Second Circuit's summary orders, based on its order in *Robinson*, "as to whether the Government may highlight a criminal defendant's leadership role without simultaneously seeking a leadership enhancement under U.S.S.G. § 3B1.1(a)."  115 F.4th at 152 n.4.  That footnote does not, in fact, support Defendant's position.  In *Robinson*, the Court recognized a breach—in a "close call"—because the Government "used the Guidelines' term of art 'manager,' in an entirely conclusory fashion . . . without reference to a single fact supporting that characterization."  *Robinson*, 634 F. App'x at 50-51 (concluding that "the gratuitous reference to [Defendant's] 'managerial role,' divorced from any facts concretely describing [Defendant's] actions . . . . is [] properly construed as an argument for a role enhancement, rather than a § 3553(a) argument or presentation of facts relevant to sentencing" because it "inevitably suggested that the district court should apply a role enhancement and otherwise bore not at all on [Defendant's] sentencing").  Here, in contrast and as explained *supra*, the facts about financial harm raised by the Government "served [a] purpose other than to call the district court's attention to the possibility of a[n] enhancement"—they provided information relevant to restitution and to the § 3553(a) factors.  *Id.* at 50.

15

"facts relevant to sentencing." Plea Agreement at 6.

Defendant also suggests that the Government "breach[ed] the agreement by 'acting in bad faith,'" *Gordon*, 2020 WL 529301, at *4 (alterations omitted) (quoting *Wilson*, 920 F.3d at 163)—specifically, by withholding the kickback allegation until sentencing, Mot. at 16 (contending that "the government may be open to a bad-faith charge" where it "was aware of [the] relevant factual information at the time of the plea"). He provides no support, however, for the proposition that the Government's advocacy in a manner that the "plea agreement expressly provide[s] for" could amount to bad faith. *Helm*, 58 F.4th at 84; *cf. Wilson*, 920 F.3d at 166-67 (holding that the Government violated the defendant's "reasonable expectations" when it "made the conscious choice to exclude certain enhancements" from the plea agreement and then advocated for those same enhancements at sentencing, "based upon information now known to the Office," despite having agreed to "make no motion for an upward departure"); *Gordon*, 2020 WL 529301, at *4 (determining that the Government did not act in bad faith when it "simply apprised Probation of newly discovered relevant facts"). As explained *supra*, the Government raised the kickback allegation without arguing "that the facts it presented to the Court in response to the Court's questions [should] result in any change to the Guidelines calculation." Gov't Sept. 27, 2024 Letter at 4 (further asserting that "Handler tellingly does not even explain how the facts proffered by the Government actually could affect the Guidelines"). The Court will not find bad faith where the Government "t[ook] the very action" contemplated by the Plea Agreement, *Helm*, 58 F.4th at 84—raising a "fact[] relevant to sentencing," Plea Agreement at 6.

Finally, Defendant mischaracterizes the implications of the Court's breach-of-plea ruling. Mot. at 15 (suggesting that "[n]o defendant would enter into a plea agreement if he knew the government could simply disavow the stipulations underlying the deal and try to prove up other facts, events, or sentencing considerations"); *see also* Sentencing Tr. at 95:11-18 ("[T]he rule

16

simply cannot be that . . . the only thing that can't happen is that . . . neither side can ask for a departure, neither side can ask for an adjustment, but anything else goes as long as you don't say those words."). As Defendant recognizes, "[a] plea agreement is a contract." Mot. at 9. Defendants and the Government can—and do—agree to plea agreements that expressly limit the Government's ability to make certain arguments about the § 3553(a) factors. *See, e.g.*, U.S.S.G. § 6B1.4 ("A plea agreement may be accompanied by a written stipulation of facts relevant to sentencing."); *United States v. Farias-Contreras*, 104 F.4th 22, 25 (9th Cir. 2024) (en banc) (agreeing "not to recommend a sentence in excess of the low-end of the guideline range"); *United States v. Vaval*, 404 F.3d 144, 149 (2d Cir. 2005) (agreeing to "take no position concerning where within the Guidelines range determined by the Court the sentence should fall"). Here, the Government could raise "*any*" relevant "fact at sentencing," Mot. at 15, because the Plea Agreement specifically permitted it to do so, Plea Agreement at 6.

"Accordingly, the Court determines that [Defendant] raises no substantial question of law or fact and therefore fails to satisfy the third part of the four-part test for granting a defendant's release pending appeal." *United States v. Gordon*, No. 03 Cr. 1115 (RWS), 2007 WL 162491, at *5 (S.D.N.Y. Jan. 22, 2007).

B.   **Defendant Cannot Meet the Other Requirements for Bail Pending Appeal.**

"Because Defendant has failed to demonstrate that his appeal presents a substantial question of law or fact, the Court need not consider whether the issue Defendant raises on appeal is likely to result in a reversal of his conviction or a new trial." *United States v. Newman*, No. 12 Cr. 121 (RJS), 2013 WL 1943342, at *3 (S.D.N.Y. May 7, 2013).

Even if Defendant had raised a substantial question, however, his failure to meet the remaining requirements of 18 U.S.C. § 3143(b)(1) would still compel denial of his motion. To wit, "the presence of a substantial question suffices only if a decision on that question in a

defendant's favor would be likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeals process." *United States v. Kaufman*, No. 19 Cr. 504 (LAK), 2021 WL 8055691, at *1 (S.D.N.Y. Oct. 27, 2021); *see* 18 U.S.C. § 3143(b)(1)(B)(i)-(iv).

Defendant's appeal, even if successful, is not likely to result in "reversal" or "an order for a new trial," 18 U.S.C. § 3143(b)(1)(B)(i)-(ii), because he pleaded guilty and is not seeking to withdraw his guilty plea. Nor is his appeal likely to result in "a sentence that does not include a term of imprisonment," *id.* § 3143(b)(1)(B)(iii), given that Defendant himself requested a custodial sentence of a year and a day imprisonment. "In addition, any remand for resentencing would be unlikely to result in a reduced term of imprisonment." *United States v. Carrano*, No. 17 Cr. 460 (SHS), 2018 WL 6991040, at *1 (S.D.N.Y. Dec. 28, 2018); *see* 18 U.S.C. § 3143(b)(1)(B)(iv). This Court sentenced Defendant to 58 months' imprisonment, within the Stipulated Guidelines Range, after engaging in a full Guidelines analysis and giving due consideration to the remaining factors identified in 18 U.S.C. § 3553(a). The duration of the average criminal appeal in the Second Circuit, from notice of the appeal to resolution, is sixteen months.[5] Defendant filed his notice of appeal on October 15, 2024. Thus, when Defendant voluntarily surrenders on January 7, 2025, he can expect to wait, on average, about thirteen more months to learn the outcome of his appeal.

Defendant's Stipulated Guidelines Range is 51 to 63 months. Given the disparity between that range, on the one hand, and the thirteen months that likely will pass before

---

[5] Table B-4A, "U.S. Courts of Appeals—Median Time Intervals in Months for Civil and Criminal Appeals Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2023."

18

Defendant's appeal is resolved, on the other, "even if Defendant's sentence were [] vacated and remanded, it is not *likely* that he would receive . . . a sentence 'to a term of imprisonment less than . . . the expected duration of the appeal process.'" *Gordon*, 2007 WL 162491, at *5 (quoting 18 U.S.C. § 3143(b)(1)(B)(iv)). "In short, the Court finds that [Defendant] has not met [his] burden of showing that h[is] [within]-Guidelines sentence was infected with error that presents a 'substantial question' likely to result in a reduced sentence on appeal." *Bodouva*, 2016 WL 7351634, at *6.

## IV.    CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed, the arguments are either moot or without merit. *See Aiyer*, 500 F. Supp. at 26. Because Defendant Martin Handler has not demonstrated that his appeal raises a substantial question of law or fact that, if successful, would likely result in a reduced sentence to a term of imprisonment less than the expected duration of the appeal process, his motion for bail pending appeal is DENIED. Defendant is ordered to surrender to his designated institution no later than January 7, 2025 at 2:00 p.m.

The Clerk of Court is directed to terminate ECF No. 513.

SO ORDERED.

Dated:  December 6, 2024
        New York, New York

JENNIFER H. REARDEN
United States District Judge