UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE GRAND JURY SUBPOENAS DATED
JANUARY 11, 2023 AND JUNE 28, 2023

23 Cr. 004 (JHR)

OPINION & ORDER (SEALED)

JENNIFER H. REARDEN, District Judge:

Defendants Martin Handler, Isidore Handler, Menachem Lieberman, Harold Schwartz, Ben Werczberger, and Arie Rangott were indicted for participating in schemes to defraud government-funded daycare programs, including non-profit daycare provider Project Social Care Head Start, Inc. ("PSCHS"). The Government moved for an order directing PSCHS and its former legal counsel, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊[1] to comply with grand jury subpoenas seeking records relating to two of those schemes (collectively, the "Subpoenas").

The Government argued that the crime-fraud exception to the attorney-client privilege applied, and, in the alternative, that PSCHS was a defunct entity that was no longer entitled to the protections of the privilege. The Court denied the Government's motion without prejudice, citing insufficient evidence in support of the Government's representations. The Government renewed its motion and adduced a sworn declaration describing numerous indicia of PSCHS's defunct corporate status. Upon consideration of that submission, the Court granted the Government's motion. This opinion sets forth the context and bases for that ruling.

---

[1] After the Government filed its motion, ▊▊▊▊▊▊▊▊ changed its name to ▊▊▊▊▊▊▊. To maintain consistency between the Government's filings and this Order, the Court refers to the firm as "▊▊▊▊▊▊▊▊."

BACKGROUND

**A. The Charged Crimes**

On January 4, 2023, a grand jury returned a seven-count indictment, 23 Cr. 004, against M. Handler, I. Handler, Lieberman, Schwartz, and Werczberger. Eight months later, on September 11, 2023, a grand jury returned a superseding indictment, S2 23 Cr. 004, against M. Handler, Lieberman, Schwartz, Werczberger, and Rangott. *See* ECF No. 129 (S2 Indictment).

In broad terms, the S2 Indictment charged Defendants with participating in schemes involving government-funded daycare programs for low-income families. The purported schemes included fraud upon the U.S. Department of Health and Human Services ("HHS") and two of its component agencies, the Office of Head Start ("OHS") and HHS's Office of Inspector General ("HHS OIG"). According to the Indictment, M. Handler and Lieberman "secretly 'owned' . . . a non-profit daycare provider"—*viz.*, PSCHS—and, together with Schwartz, Werczberger, and Rangott, made "repeated misrepresentations" and "false statements" about PSCHS's operations to HHS, OHS, and HHS OIG in order to reap "millions of dollars" in grants awarded to PSCHS. *Id.* ¶¶ 1-3. As relevant here, (1) in response to a December 7, 2021 letter from OHS to PSCHS raising concerns about PSCHS's less-than-arms-length relationship with Lieberman (the "OHS Complaint Letter"), M. Handler, Lieberman, Schwartz, and Rangott conspired to create and submit a response to HHS on December 21, 2021 that falsely denied OHS's allegations (the "PSCHS Response Letter"), *see* Count Four of the S2 Indictment, and (2) Lieberman and Rangott conspired to obstruct an HHS OIG whistleblower retaliation investigation of PSCHS in or about August and September 2022 (the "HHS OIG Investigation"), *see* Count Eight of the S2 Indictment.

B. **The Subpoenas and Subject Materials**

The Subpoenas called for the production of documents and associated communications (the "Subject Materials") between PSCHS and ▆▆▆▆▆▆▆▆ that were created, sent, or received between December 7, 2021 and January 11, 2023 in furtherance of the aforementioned conspiracies.

1. The PSCHS Subpoena

On January 11, 2023, the Government served on PSCHS a subpoena (the "PSCHS Subpoena") seeking records relating to the PSCHS Response Letter. *See* Ghosh Decl. Exhibit A. Specifically, the PSCHS Subpoena sought (1) communications regarding the OHS Complaint Letter, (2) materials concerning investigative steps taken by or on behalf of PSCHS "that supported the 'findings'" summarized in the PSCHS Response Letter, and (3) drafts of the PSCHS Response Letter. *Id.* ¶ 12.

In its motion, the Government represented that PSCHS had not produced any records in response to the PSCHS Subpoena. Mot. at 5. The Government viewed this as "a product of PSCHS lacking any board of directors, staff, or counsel." *Id.* at 6. Indeed, although PSCHS initially retained outside counsel to represent its interests in connection with the PSCHS Subpoena, within a matter of months, PSCHS's outside counsel informed the Government that it was withdrawing from its representation of PSCHS . . . . because, in its view, PSCHS lacked any authorized person who could direct the counsel to take (or not take) actions on behalf of PSCHS." *Id.* According to the Government, "[n]o other law firm or lawyer ha[d] contacted the Government on behalf of PSCHS in connection with the PSCHS Subpoena." *Id.*

2. The ▆▆▆▆▆▆▆▆ Subpoena

In addition to the PSCHS Subpoena, on June 28, 2023, the Government served a

3

subpoena on ▮▮▮▮▮ (the "▮▮▮▮▮ Subpoena"). *See* Ghosh Decl. Exhibit B. The Government asserted that, "[a]s PSCHS's legal counsel, ▮▮▮▮▮ helped draft the PSCHS Response Letter and later represented PSCHS's interests during the HHS OIG Investigation." Mot. at 2.

The ▮▮▮▮▮ Subpoena sought (1) retainer and compensation agreements among ▮▮▮▮▮ and PSCHS, any PSCHS employees or board members, and/or Lieberman, M. Handler, and I. Handler; (2) bills rendered by ▮▮▮▮▮ to the those entities or individuals; (3) communications among ▮▮▮▮▮ and those entities or individuals pertaining to the PSCHS Response Letter, to drafts of the PSCHS Response Letter, and to documents relating to any investigation undertaken by ▮▮▮▮▮ into the allegations in the OHS Complaint Letter; and (4) communications with those individuals and entities concerning the HHS OIG Investigation and all documents collected from PSCHS regarding that investigation, including related correspondence. *See generally* Ghosh Decl. Ex. B.

In response to the ▮▮▮▮▮ Subpoena, ▮▮▮▮▮ produced 1,917 pages of documents (most of which were substantially redacted), and "a 54-page privilege log containing entries for communications between December 9, 2021 and January 19, 2023." Mot. at 7. Because "the only arguably privileged materials the ▮▮▮▮▮ Subpoena sought were those related to the PSCHS Response Letter and the HHS OIG Investigation," the universe of documents withheld by ▮▮▮▮▮ was "coterminous with the Subject Materials." *Id.*

4

## C. The Instant Proceedings[2]

The Government moved to compel PSCHS and ▋ to comply with the Subpoenas on two principal grounds. *First*, it argued that the Subject Materials were subject to the crime-fraud exception to the attorney-client privilege and thus needed to be produced either to the Government or to the Court for *in camera* review. *Second*, the Government contended that "PSCHS no longer functionally exist[ed]" as an entity, and therefore that there was "no valid claim of privilege" to be asserted. Mot. at 3, 29.

The Court denied the Government's motion without prejudice, explaining that, "[u]nder the circumstances present here—where the pending motion has not been subjected to traditional adversarial testing—th[e] motion w[ould] not be granted absent a declaration, annexed exhibits, and/or other appropriate evidence supporting the Government's representations."

Thereafter, the Government provided a sworn declaration from FBI Special Agent John Hubbard (the "Supplemental Declaration") detailing PSCHS's corporate status. For example, the Supplemental Declaration discussed the "lack[] [of] a governing board" and of "representatives with decision-making authority." The Special Agent recounted that, several months after the Indictment was filed, the law firm Shapiro Arato—which had been retained to represent PSCHS—notified the Government that it was "formally withdrawing as counsel . . . . because [it had] concluded that PSCHS lacked any employees or representatives that could make decisions on behalf of PSCHS." *Id.* According to the firm, "the only individual who was acting on behalf of PSCHS was ▋, a former paid employee of PSCHS who was no

---

[2] Anthony Proscia, an individual identified by the Government as ▋ "representative," received contemporaneous notice of all submissions and orders relating to this motion. In an abundance of caution, the Court also noticed ▋ *see infra* at 6, an attorney included on the Government's correspondence. Neither individual took a position or otherwise responded to this motion.

5

longer being paid and, instead, was volunteering her time to assist PSCHS obtain federal funding to provide Head Start services." *Id.*

The Supplemental Declaration also described a meeting between one of HHS's component agencies—the Administration for Children and Families ("ACF")—and two "individuals purporting to act on behalf of PSCHS": a volunteer and a self-identified "prospective chair of PSCHS's board." *Id.* ¶ 8. At least one of the two supposed PSCHS representatives "admitted at the meeting that PSCHS d[id] not currently have a functioning board" and "thus, it [wa]s unclear who if anyone ha[d] legal or fiscal responsibility for PSCHS." *Id.* (alterations omitted). This aligned with a statement to the Government from another self-proclaimed PSCHS representative, ▬▬▬▬▬▬▬, who previously had claimed to have been elected as PSCHS's new chairman—that "PSCHS [wa]s 'not a going concern' and was 'winding down.'" *Id.* ¶ 14.

The Supplemental Declaration also addressed PSCHS's conduct (or lack thereof) after ACF "issued a series of notices of emergency temporary suspension of financial assistance" in the wake of the Indictment. PSCHS repeatedly failed to correct the deficiencies identified by ACF during its review of the entity and did not otherwise respond to ACF's findings. For example, "[o]n or about July 13 and 14, 2023, ACF notified PSCHS that ACF 'intended to conduct a follow-up review of PSCHS . . . , and requested that PSCHS's governing body confirm a time it would be available for the follow-up review.'" *Id.* ¶ 12. "No one purporting to act on behalf of PSCHS . . . responded to ACF's notification." *Id.* And several months later, after "PSCHS still [had] not correct[ed] (let alone respond[ed]) to ACF's earlier finding of deficiencies[,] . . . *ACF issued a notice of final termination of financial assistance to PSCHS*[,] stating that the termination would take effect within 30 days absent an administrative appeal by

PSCHS"—an appeal that no one at PSCHS ever pursued—and thus, "PSCHS's funding was permanently terminated on November 30, 2023." *Id.* ¶ 13 (emphasis added).

In addition, the Supplemental Declaration attested to PSCHS's continued "failure to file relevant documentation with the IRS." *Id.* ¶ 18. To wit, PSCHS had "last filed a Form 990— *i.e.*, the form the IRS requires tax-exempt organizations to file annually with the IRS— . . . [on] October 25, 2022, which [wa]s approximately two-and-a-half months before PSCHS was served with a grand jury subpoena." *Id.*

The Supplemental Declaration further noted PSCHS's failure to register and to renew relevant permits with New York City, highlighting that PSCHS did "not [appear in the] database of inspection records for childcare providers maintained by the New York City Department of Health and Mental Hygiene ('DOHMH')." *Id.* ¶ 20. "Similarly, a database that was last updated April 26, 2023, state[d] that permits issued to PSCHS by the DOHMH [had] most recently expired on January 19, 2023." *Id.* ¶ 21.

Based on the foregoing and other specifics set forth in the Supplemental Declaration, the Government contended that "Project Social Care Head Start Inc. no longer functionally exist[ed] and [wa]s therefore not capable of asserting any applicable privilege over the materials at issue." Renewed Mot. at 1.

The Court granted the Government's motion, concluding that "PSCHS [wa]s a defunct entity for purposes of attorney-client privilege such that PSCHS no longer retain[ed] the protections of the privilege, if any, over the Subject Materials."

## LEGAL STANDARDS

Motions to compel are "entrusted to the sound discretion of the district court." *Am. Sav. Bank, FSB v. UBS PaineWebber, Inc.*, 330 F.3d 104, 108 (2d. Cir. 2003) (quoting *United States*

*v. Sanders,* 211 F.3d 711, 720 (2d Cir. 2000)).  With respect to the attorney-client privilege, it is "well established that the party invoking a privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003).  "The burden is a heavy one, because privileges are neither 'lightly created nor expansively construed.'" *Id.* (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).  In that regard, although "[t]he attorney-client privilege can be asserted on behalf of a corporation[,] . . . [t]he ability to assert the privilege [on the corporation's behalf] must be narrowly construed." *Lewis v. United States*, No. 02 Civ. 2958 (JDB) (STA), 2004 WL 3203121, at *2 (W.D. Tenn. Dec. 7, 2004), *aff'd*, 02-2958, 2005 WL 1926655 (W.D. Tenn. June 20, 2005) (citing *In re Grand Jury Proceedings Oct. 12, 1995,* 78 F.3d 251, 254 (6th Cir. 1997)).  "[F]or solvent corporations, . . . the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *CFTC v. Weintraub*, 471 U.S. 343, 348 (1985); *Gilliland v. Geramita*, No. 05 Civ. 01059 (TFM), 2006 WL 2642525, at *3 (W.D. Pa. Sept. 14, 2006) ("In an operating corporation, the attorney-client privilege is controlled by the corporation's current management.").  "The weight of authority [] holds that a dissolved or defunct corporation retains no privilege." *S.E.C. v. Carrillo Huettel LLP*, No. 13 Civ. 1735 (GBD) (JCF), 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015) (collecting cases); *accord United States v. Roscoe*, No. 07 Cr. 00373 (RMW), 2011 WL 13143140, at *3 (N.D. Cal. Jan. 6, 2011) (applying in the criminal context the principle that "[a] corporation that is defunct cannot assert the attorney-client privilege"); *United States v. Cox*, No. 14 Cr. 0140 (MAP), 2015 WL 13741738, at *4 (M.D. Fla. Oct. 7, 2015) (same); *United States v. Cole*, 569 F. Supp. 3d 696, 701-02 (N.D. Ohio 2021) (same); *cf. United States v. Ivers*, No. 18 Cr. 00090 (RWP) (CFB), 2018 WL 11025541, at *3 (D. Minn. June 26, 2018) ("the attorney-

8

client privilege . . . applies equally to civil and criminal matters"), *aff'd*, 967 F.3d 709 (8th Cir. 2020). This interpretation "is consistent with the principle that the privilege is to be construed narrowly because it withholds relevant information from the judicial process." *Carrillo Huettel LLP*, 2015 WL 1610282, at *3.

## DISCUSSION

The sworn declaration proffered by the Government established that PSCHS no longer functionally existed. "To determine whether a corporation has 'died,' courts [] look to practical business realities rather than technical legal status." *Off. Comm. of Admin. Claimants ex rel. LTV Steel Co. v. Moran*, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011).

Applying this standard, the Court identified several facts establishing PSCHS's defunct status. *First*, "there [were] no current management personnel who c[ould] . . . assert the attorney-client privilege on behalf of the corporation." *Gilliland*, 2006 WL 2642525, at *3. That is to say, any "officers and directors ha[d] apparently resigned [or otherwise abandoned their responsibilities], and there [wa]s no officer, director or manager in charge." *Id*. That was borne out by, *inter alia*, (1) former counsel Shapiro Arato's representation that "the only individual who was acting on behalf of PSCHS was . . . a former paid employee of PSCHS who was no longer being paid"; (2) the admission to ACF by at least one of PSCHS's professed representatives "that PSCHS d[id] not [at that time] have a functioning board," and, "thus, it [wa]s unclear who if anyone ha[d] legal or fiscal responsibility for PSCHS"; and (3) PSCHS's failure to respond to ACF's request "that PSCHS's governing body confirm a time it would be available for the follow-up review." *See, e.g.*, *id.* (corporation deemed defunct where, *inter alia*, "[t]here [wa]s simply no person that [wa]s in a role analogous to current corporate management . . . . 'who c[ould] take action on behalf of [] the entities'" (citation omitted)); *see also, e.g.*,

9

*Lewis*, 2004 WL 3203121, at *4 (company lacking "directors . . . or employees" was "dead," and thus "the Court f[ound] that the attorney-client privilege should not apply").

*Second*, PSCHS's other "actions . . . suggest[ed] that [it was] no longer treated . . . as a functioning entity." *Express Homebuyers USA, LLC v. WBH Mktg., Inc.*, No. 18 Civ. 60166 (LSS), 2018 WL 4922467, at *3 (S.D. Fla. Feb. 9, 2018). These actions included its "failure to file required annual returns." *See Carrillo Huettel LLP*, 2015 WL 1610282, at *4. PSCHS had last filed the requisite IRS form for tax-exempt organizations in October 2022, and "ha[d] not filed [it] for any tax year" thereafter. Suppl. Decl. ¶ 19.

*Third*, PSCHS had not filed key registration papers nor renewed relevant permits with New York City. According to the Supplemental Declaration, PSCHS did not appear in the database of inspection records for childcare providers maintained by the New York City Department of Health and Mental Hygiene. *Id.* ¶ 20. And another database revealed that permits issued to PSCHS by DOHMH had expired on January 19, 2023. *Id.* ¶ 21. Thus, although "[t]he New York Department of State, Division of Corporations website reflect[ed] that [] [PSCHS] [wa]s listed as an active entity, . . . [it] d[id] little to bolster [any] claim that [PSCHS] [wa]s active." *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, No. 19 MDL 2904 (MCA) (MAH), 2023 WL 8595741, at *5-6 (D.N.J. Oct. 16, 2023) (corporation's "fail[ure] to file two biennial statements," as required in New York, established in part that entity was "a defunct entity that ha[d] lost the protections of privilege"), *aff'd*, No. 19 Civ. 2904, 2024 WL 5344456 (D.N.J. July 17, 2024).

"In short, the [Government's] evidence [was] not . . . rebutted [by PSCHS], and [PSCHS]—the party with the burden of demonstrating the applicability of the privilege—[did] not show[] that it continue[d] to exist such that it could assert any privilege." *Carrillo Huettel*

*LLP*, 2015 WL 1610282, at *4; *see also, e.g.*, *SEC v. Pence*, No. 17 Misc. 23744 (FAM), 2017 WL 5624271, at *3 n.3 (S.D. Fla. Nov. 20, 2017) ("Because [entity] is no longer active, it has no privilege to assert.").[3]

## CONCLUSION

For the foregoing reasons, the Court GRANTED the Government's motion to compel production of the Subject Materials.  By **August 28, 2025**, the Government shall submit a letter, supported by authorities, addressing why its motion to compel, the instant Opinion & Order, and all other orders and submissions associated with the motion should remain under seal and without notice to the Defendants in this action.

SO ORDERED.

Dated: August 25, 2025
New York, New York

_____
JENNIFER H. REARDEN
United States District Judge

---

[3] As previously explained, the Government also contended that the Court should compel compliance with the Subpoenas for the separate and independent reason that the crime-fraud exception to the attorney-client privilege applied. *See* Mot. at 1–7.  "The court does not need to reach this issue in view of its previous findings." *Roscoe*, 2011 WL 13143140, at *4 (disposition based on entity's defunct status rendered it unnecessary to reach the argument that "the communication between counsel and [the entity] [wa]s not privileged because the crime-fraud exception applie[d]"); *see also, e.g.*, *Carrillo Huettel LLP*, 2015 WL 1610282, at *2 (deeming movant's argument that "corporate entities that [counsel] once represented are now defunct" to be "fully dispositive" and declining to "reach the other argument[] [that] . . . . the crime/fraud exception applies").  For that reason, "it [wa]s [also] unnecessary for the court to [determine whether to] conduct *in camera* review of the withheld documents," as requested by the Government.  *CFTC v. WeCorp, Inc.*, No. 09 Civ. 00153 (PMP), 2010 WL 11530274, at *5 (D. Haw. Mar. 29, 2010) (movant's request for *in camera* proceedings not reached "[b]ecause the Court conclude[d] that the attorney-client privilege c[ould] no longer be asserted on behalf of [the entity]").